### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| BRYAN TRAHAN, Individually and for Others Similarly Situated, | Case No. _____ |
| Plaintiff, | Jury Trial Demanded |
| v. | FLSA Collective Action Pursuant to 29 U.S.C. § 216(b) |
| SOUTHWESTERN ENERGY CORPORATION, | |
| Defendant. | |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Bryan Trahan (Trahan) brings this collective action lawsuit to recover unpaid overtime wages and other damages from Southwestern Energy Corporation (SWN) under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*

2.      Trahan worked for SWN as a Drilling Consultant.[1]

3.      Trahan and the Day Rate Workers (as defined below) regularly work for SWN in excess of 40 hours each week.

4.      But SWN never paid Trahan and the Day Rate Workers overtime.

5.      Instead of paying Trahan and the Day Rate Workers overtime, SWN classified these workers as independent contractors and paid them a flat amount for each day worked (a "day rate") with no overtime pay for hours worked in excess of 40 hours in a workweek in violation of the FLSA.

6.      Trahan and the Day Rate Workers never received a guaranteed salary.

---

[1] In the oil and gas industry, Drilling Consultants are also referred to as Drill Site Managers, Well Site Supervisors, Company Men, Drill Safety Managers, Company Representatives, etc.

7.      This collective action seeks to recover unpaid overtime wages and other damages owed to these workers.

### JURISDICTION & VENUE

8.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9.      This Court has general personal jurisdiction over SWN because SWN maintains its headquarters in Spring, Texas, which is in this District and Division.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because SWN maintains its headquarters in Spring, Texas, which is in this District and Division.

### PARTIES

11.     Trahan worked for SWN as a Drilling Consultant from approximately December 2021 until July 2022.

12.     Throughout his employment, SWN classified Trahan as an independent contractor.

13.     Throughout his employment, Trahan was paid a day rate with no overtime compensation.

14.     Trahan's written consent is attached as **Exhibit 1**.

15.     Trahan brings this action on behalf of himself and all other similarly situated Drilling Consultants who worked for, or on behalf of, SWN, who were classified as independent contractors and paid on a day rate basis.

16.     SWN classified each of these workers as independent contractors and paid them a flat amount for each day worked with no overtime pay for hours worked in excess of 40 hours in a workweek in violation of the FLSA.

17.     The FLSA collective of similarly situated workers sought to be certified is defined as follows:

**All current and former Drilling Consultants[2] who worked for, or on behalf of, SWN who were classified as independent contractors and paid a day rate with no overtime at any time during the past 3 years through the present ("Day Rate Workers").**

18.     SWN is a ~~Texas~~ Delaware corporation that maintains a headquarters in Spring, Texas.

19.     SWN can be served with process by serving its registered agent: **C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201**.

## COVERAGE UNDER THE FLSA

20.     At all relevant times, SWN was an employer within the meaning of the Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

21.     At all relevant times, SWN was an enterprise within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

22.     At all relevant times, SWN was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as hand tools, equipment, cell phones, computers, walkie-talkies, hardhats, and personal protective equipment – that have been moved in or produced for commerce.

23.     At all relevant times, SWN has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

24.     At all relevant times, Trahan and the Day Rate Workers were engaged in commerce or in the production of goods for commerce.

25.     SWN uniformly applied its policy of misclassifying Trahan and the Day Rate Workers

---

[2] In the oil and gas industry, Drilling Consultants are also referred to as Drill Site Managers, Well Site Supervisors, Company Men, Drill Safety Managers, Company Representatives, etc.

as independent contractors and paying them a day rate with no overtime.

26.    SWN applied this policy regardless of any alleged individualized factors such as specific job title, project, or geographic location.

27.    By paying Trahan and the Day Rate Workers a day rate with no overtime, SWN violated (and continues to violate) the FLSA's requirement that it pay employees overtime compensation at a rate not less than 1.5 times their regular rate of pay for hours worked in excess of 40 in a workweek.

28.    As a result of SWN's day rate pay policy, Trahan and the Day Rate Workers do not receive overtime pay in violation of the FLSA.

29.    SWN's uniform compensation scheme of paying Trahan and the Day Rate Workers a day rate with no overtime compensation for weeks in which these workers work over 40 hours is itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

30.    SWN treated Trahan and the Day Rate Workers as employees and uniformly dictated the pay and other employment practices it applied to Trahan and the Day Rate Workers.

31.    SWN's misclassification of Trahan and the Day Rate Workers as independent contractors does not alter their status as employees for purposes of the FLSA.

## FACTUAL ALLEGATIONS

32.    SWN bills itself as "among the largest natural gas and natural gas liquid producers in the United States … primarily engaged in the production and development of natural gas, natural gas liquids, and crude oil within the nation's most prolific shale gas basins.[3]

33.    To meet its business objectives, SWN hires Drilling Consultants (including Trahan and the Day Rate Workers) to perform drilling services.

---

[3] https://www.swn.com/about/ (last visited February 22, 2023).

4

34.     SWN uniformly misclassifies these workers (including Trahan and the Day Rate Workers) as independent contractors to avoid paying them overtime.

35.     SWN does not hire these workers (including Trahan and the Day Rate Workers) on a project-by-project basis.

36.     Rather, SWN hires and treats these workers (including Trahan and the Day Rate Workers) just like regular, even if sometimes short-term, employees.

37.     Many of these workers worked for SWN on a day rate basis and make up the proposed putative class of Day Rate Workers.

38.     While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

39.     For example, Trahan worked for SWN as a Drilling Consultant from approximately December 2021 until July 2022.

40.     Throughout his employment, Trahan was paid on a day rate basis and did not receive overtime when he worked in excess of 40 hours in a week.

41.     Specifically, Trahan received $1,350 for each day he actually worked, regardless of the number of hours he worked in a day or workweek.

42.     SWN paid Trahan and the Day Rate Workers a flat sum for each day worked, regardless of the number of hours they worked that day (or in that workweek) and failed to pay them overtime when they worked in excess of 40 hours in a workweek.

43.     SWN does not pay Trahan and the Day Rate Workers a guaranteed salary.

44.     SWN only pays Trahan and the Day Rate Workers their set day rate for the actual days they worked.

45.     If Trahan and the Day Rate Workers did not work, they did not get paid.

46.     Trahan and the Day Rate Workers do not receive overtime pay.

47.     This is despite the fact Trahan and the Day Rate Workers regularly work overtime.

48.     Trahan and the Day Rate Workers work in accordance with the schedule set and controlled by SWN.

49.     For example, throughout his employment, Trahan typically worked 12-20 hours a day, for 7 days a week, for 2 weeks on/2 weeks off hitches.

50.     Thus, Trahan typically worked 84-140 hours a week, well in excess of the 40-hour threshold for overtime compensation.

51.     Trahan's work schedule is typical of the Day Rate Workers.

52.     Although Trahan and the Day Rate Workers typically work 12-20 hours a day, for 7 days a week, they do not receive any overtime compensation for the hours they work in excess of 40 hours in a workweek.

53.     Trahan and the Day Rate Workers received their day rate regardless of the number of hours they worked in a day or week, even when they worked more than 40 hours in a workweek.

54.     SWN knows Trahan and the Day Rate Workers work for at least 12-20 hours a day, for 7 days a week, for 2 weeks on/2 week off hitches.

55.     SWN's records reflect the fact that Trahan and the Day Rate Workers regularly work far in excess of 40 hours in certain workweeks.

56.     But SWN does not pay Trahan or the Day Rate Workers overtime compensation at a rate not less than 1.5 times their regular rate of pay for hours worked in excess of 40 in any of those weeks.

57.     Instead, SWN pays Trahan and the Day Rate Workers on a day rate basis.

58.     Trahan and the Day Rate Workers are not employed on a salary basis.

59.     Trahan and the Day Rate Workers do not, and have never, received guaranteed weekly compensation from SWN irrespective of the number of days worked (i.e., the only compensation they receive is the day rate they are assigned for all hours worked in a single day or week).

60.     SWN's policy of paying Trahan and the Day Rate Workers a day rate with no overtime compensation violates the FLSA because it deprives Trahan and the Day Rate Workers of overtime pay at a rate not less than 1.5 times their regular rate of pay for the hours they work in excess of 40 hours in a single workweek.

61.     Despite uniformly misclassifying Trahan and the Day Rate Workers as independent contractors, SWN controls all meaningful aspects of these workers' jobs.

62.     SWN controls Trahan and the Day Rate Workers' rates and methods of pay.

63.     SWN controls Trahan and the Day Rate Workers' schedules and assignments.

64.     SWN controls Trahan and the Day Rate Workers' work.

65.     SWN requires Trahan and the Day Rate Workers to follow SWN's policies, procedures, drill plan, and specifications.

66.     Trahan and the Day Rate Workers' work must strictly adhere to the quality standards put in place by SWN.

67.     Trahan and the Day Rate Workers are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

68.     Indeed, the daily and weekly activities of Trahan and the Day Rate Workers are routine and largely governed by standardized plans, procedures, and checklists created by SWN.

69.     Virtually every job function is predetermined by SWN, including the tools and equipment used at the job site, the data to compile, the schedule of work, and related work duties.

70. SWN prohibits Trahan and the Day Rate Workers from varying their job duties outside of the predetermined parameters and requires Trahan and the Day Rate Workers to follow SWN's policies, procedures, and directives.

71. For example, as a Drilling Consultant, Trahan's primary responsibilities included ensuring that SWN's well or drilling projects are safely completed in accordance with SWN's Well Plan, Drilling Procedure, specifications, policies, and expectations.

72. SWN prohibited Trahan and Day Rate Workers from straying from SWN's procedures, plan, and specifications.

73. Without the job performed by Trahan and the Day Rate Workers, SWN would not be able to complete its business objectives of acquiring and developing oil and gas assets.

74. Trahan and the Day Rate Workers relied on SWN for work and compensation.

75. Trahan and the Day Rate Workers cannot subcontract out the work they are assigned by SWN.

76. Trahan and the Day Rate Workers did not substantially invest in the tools required to complete the overall job to which they were assigned.

77. Rather, SWN incurred the large-scale business and operating expenses like payroll, marketing, construction equipment, tools, and materials.

78. Trahan and the Day Rate Workers did not market their services while employed by SWN.

79. SWN set Trahan and the Day Rate Workers' work schedule, which prohibited them from working other jobs for other companies while working for SWN.

80. Indeed, Trahan and the Day Rate Workers are required to travel and live at or near their assigned jobsites during their 2-week hitches.

8

81.     At all relevant times, SWN maintained control, oversight, and direction of Trahan and the Day Rate Workers, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

82.     Trahan and the Day Rate Workers do not have the power to hire, fire, or discipline any SWN employees.

83.     SWN is aware, or should have been aware, that it was subject to the FLSA, including its overtime requirements.

84.     SWN is aware, or should have been aware, that the FLSA required it to pay Trahan and the Day Rate Workers overtime at a rate not less than 1.5 times these employees' regular rates of pay for all hours worked in excess of 40 hours in a workweek.

85.     SWN is aware, or should have been aware, that Trahan and the Day Rate Workers were, as a matter of economic reality, its employees and, therefore, entitled to overtime pay.

86.     SWN is aware, or should have been aware, that Trahan and the Day Rate Workers were non-exempt from, and entitled to, overtime pay.

87.     SWN is aware, or should have been aware, that Trahan and the Day Rate Workers regularly worked more than 40 hours in a workweek.

88.     SWN knew, should have known, or showed reckless disregard for, whether the conduct described in this Complaint violated the FLSA.

89.     Nonetheless, SWN did not pay Trahan and the Day Rate Workers overtime at a rate not less than 1.5 times these employees' regular rates of pay for all hours worked in excess of 40 hours in a workweek in violation of the FLSA.

90.     SWN knowingly, willfully, or in reckless disregard carried out its illegal contractor misclassification scheme that deprived Trahan and the Day Rate Workers of overtime compensation in violation of the FLSA.

91.     SWN's failure to properly classify Trahan and the Day Rate Workers as employees was neither reasonable, nor was the decision not to classify these workers as employees made in good faith.

92.     SWN knowingly, willfully, or in reckless disregard carried out this illegal day rate pay scheme that deprived Trahan and the Day Rate Workers of overtime compensation in violation of the FLSA.

93.     SWN's failure to pay overtime compensation to Trahan and the Day Rate Workers was neither reasonable, nor was the decision not to pay these employees overtime made in good faith.

COLLECTIVE ACTION ALLEGATIONS

94.     Trahan incorporates and realleges all preceding paragraphs.

95.     Trahan brings his claims as a collective action pursuant to § 216(b) of the FLSA.

96.     Numerous individuals were victimized by SWN's pattern, practice, and policy of misclassifying employees, including Trahan and the Day Rate Workers, as independent contractors and paying them a day rate with no overtime for hours worked in excess of 40 hours in a workweek, which is in willful violation of the FLSA.

97.     Numerous other individuals, like Trahan, indicated they were classified and paid in the same manner and were deprived overtime compensation for all hours worked in excess of 40 hours in a workweek as required by the FLSA.

98.     Based on his experience and tenure with SWN, Trahan is aware that SWN's illegal policies and practices SWN imposed on him were likewise imposed on the Day Rate Workers.

99.     SWN's failure to pay Trahan and the Day Rate Workers overtime wages at the rates required by the FLSA results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Day Rate Workers.

100.    The specific job titles or precise job locations of the Day Rate Workers do not prevent collective treatment.

101.    Trahan has no interest contrary to, or in conflict with, the Day Rate Workers.

102.    Like each Day Rate Worker, Trahan has an interest in obtaining the unpaid overtime wages owed to them under federal law.

103.    A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

104.    Absent this collective action, many Day Rate Workers likely will not obtain redress of their injuries, and SWN will reap the unjust benefits of violating the FLSA.

105.    Even if some of the Day Rate Workers could afford individual litigation against SWN, it would be unduly burdensome to the judicial system.

106.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the class and provide for judicial consistency.

107.    The questions of law and fact that are common to Trahan and each Day Rate Worker predominate over any questions affecting solely the individual members.

108.    Among the common questions of law and fact are:

a.    Whether Trahan and the Day Rate Workers were SWN's "employees" within the meaning of the FLSA;

b.    Whether Trahan and the Day Rate Workers were improperly misclassified as independent contractors;

c.    Whether SWN's decision to classify Trahan and the Day Rate Workers as independent contractors was made in good faith;

d.    Whether SWN's illegal pay and classification practices were applied uniformly across the nation to all Day Rate Workers;

e.    Whether Trahan and the Day Rate Workers were exempt from overtime;

f.    Whether SWN's day rate pay scheme satisfies the salary basis test;

g.      Whether SWN's decision to not pay Trahan and the Day Rate Workers overtime was made in good faith;

h.      Whether SWN's violations of the FLSA were willful.

109.    Trahan's claims are typical of the claims of the Day Rate Workers.

110.    Trahan and the Day Rate Workers sustained damages arising out of SWN's illegal and uniform employment policies and practices.

111.    Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts.

112.    Therefore, this issue does not preclude collective action treatment.

113.    SWN is liable under the FLSA for failing to pay overtime to Trahan and the Day Rate Workers.

114.    Consistent with SWN's illegal pay policy, Trahan and the Day Rate Workers were not paid the proper premium overtime compensation when they worked more than 40 hours in a workweek.

115.    As part of their regular business practices, SWN intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Trahan and the Day Rate Workers.

116.    SWN's illegal pay policy deprived Trahan and the Day Rate Workers of the premium overtime wages they are owed under federal law.

117.    SWN is aware, or should have been aware, that FLSA required it to pay Trahan and the Day Rate Workers overtime at a rate not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 hours in a workweek.

118.    There are many similarly situated Day Rate Workers who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

119.    Notice of this lawsuit should be sent to the Day Rate Workers pursuant to 29 U.S.C. § 216(b).

120.    Those similarly situated workers are known to SWN, are readily identifiable, and can be located through SWN's business and personnel records.

### CAUSE OF ACTION
### VIOLATIONS OF THE FLSA

121.    Trahan realleges and incorporates by reference all allegations in preceding paragraphs.

122.    Trahan brings this claim as a collective action under the § 216(b) of the FLSA.

123.    As set forth herein, SWN has violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than 40 hours without compensating such employees for their employment in excess of 40 hours per week at rates no less than 1.5 times the regular rates for which they were employed.

124.    SWN knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Trahan and the Day Rate Workers overtime compensation.

125.    SWN's failure to pay overtime compensation to Trahan and the Day Rate Workers was neither reasonable, nor was the decision not to pay overtime made in good faith.

126.    Accordingly, Trahan and the Day Rate Workers are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their regular hourly rates of pay, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

### JURY DEMAND

127.    Trahan demands a trial by jury.

13

**RELIEF SOUGHT**

WHEREFORE, Trahan, individually, and on behalf of the Day Rate Workers, prays for the following relief:

a.      An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) to the Day Rate Workers to permit them to join this action by filing a written notice of consent;

b.      An Order finding SWN liable to Trahan and the FLSA Class for unpaid overtime owed under the FLSA, as well as liquidated damages in an amount equal to their unpaid compensation;

c.      A Judgment against SWN awarding Trahan and the Day Rate Workers all their unpaid overtime compensation, other damages, and penalties;

d.      An Order awarding attorney's fees, costs, and expenses;

e.      Pre- and post-judgment interest at the highest applicable rates; and

f.      Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ Michael A. Josephson
    **Michael A. Josephson**
    Texas Bar No. 24014780
    **Andrew W. Dunlap**
    Texas Bar No. 24078444
    **JOSEPHSON DUNLAP LLP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com

    **Richard J. (Rex) Burch**
    Texas Bar No. 24001807
    **BRUCKNER BURCH PLLC**
    11 Greenway Plaza, Suite 3025
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    rburch@brucknerburch.com

    **ATTORNEYS FOR PLAINTIFF**
    **& PUTATIVE CLASS MEMBERS**